UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RICHARD D.,[1] | : | Case No. 3:25-cv-00216 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | District Judge Thomas M. Rose |
| SECURITY ADMINISTRATION, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[2]

Plaintiff Richard D. brings this case challenging the Social Security Administration's

denial of his application for a period of disability and Disability Insurance Benefits.  The case is

before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum

in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), and the administrative record. (Doc. #7).

### I.      Background

The Social Security Administration provides Disability Insurance Benefits to individuals

who are under a "disability," among other eligibility requirements.  *Bowen v. City of New York*,

476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a).  The term "disability" encompasses

"any medically determinable physical or mental impairment" that precludes an applicant from

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

[2] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

Plaintiff applied for benefits on May 28, 2022, alleging disability commencing October 1, 2021, due to several impairments, including fibromyalgia with pain in arms and legs, suicidal thoughts, hypersomnia, sleep apnea, abdominal pain, depression, anxiety, bipolar, colitis, gout, migraine, arthritis, neuropathy, ADHD, carpal tunnel, hypertension, asthma, and chronic fatigue. (Doc. #7-6, *PageID* #286). After Plaintiff's application was denied initially and upon reconsideration, he requested and received a hearing before Administrative Law Judge (ALJ) Stuart Adkins on February 14, 2024. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1420. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful activity since October 1, 2021, the alleged onset date.

Step 2: He has the following severe impairments: lumbar and cervical degenerative disc disease, fibromyalgia, gout, carpal tunnel syndrome, osteoarthritis, migraines, narcolepsy, obstructive sleep apnea, hypertension, irritable bowel syndrome, gastroesophageal reflux disease (GERD), kidney stones, obesity, bipolar disorder, anxiety, attention deficit hyperactivity disorder (ADHD), and depression.

Step 3: He does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity, or the most he can do, despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work as defined in 20 CFR 404.1567(b) with lifting and/or carrying twenty pounds occasionally and ten pounds frequently. He is limited to standing and/or walking

> for about four hours per eight-hour workday, and he is able to sit for about six hours in an eight-hour workday. He is limited to no climbing of ladders, ropes, or scaffolds with frequent balancing and occasional stooping, kneeling, crouching, crawling, and climbing of ramps and stairs. He is able to frequently handle and finger bilaterally. He should avoid unprotected heights and dangerous machinery. He is able to perform tasks that are not at a production-rate pace and without strict performance quotas. He is able to tolerate occasional changes to a routine work setting defined as one to two per week with those changes explained in advance."
>
> Plaintiff is capable of performing past relevant work as a customer service representative as actually and generally performed, a night auditor as generally performed, a human resources assistant as generally performed, and a controller assistant as actually and generally performed.

(Doc. #7-2, *PageID* #s 45-66).  Based on these findings, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act since October 1, 2021. *Id.* at 66.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7-2, *PageID* #s 43-66), Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11).  To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.    <u>Standard of Review</u>

Judicial review of an ALJ's decision is limited to whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v.*

*Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## III.  Discussion

Plaintiff alleges that the ALJ "engaged in a double-sided error." (Doc. #8, *PageID* #3775). First, the ALJ's decision "relies on a lack of objective evidence to discount [Plaintiff]'s fibromyalgia symptoms, while failing to explain how or whether non-objective evidence in the records was considered." *Id.* at 3773. Plaintiff also argues that the ALJ erred in rejecting Certified Nurse Practitioner (CNP) Megan Joseph's opinion. *Id.* at 3780-81. Plaintiff further contends that the ALJ erred by misstating the standard for evaluating Plaintiff's symptoms. *Id.* at 3782-84.

In response, the Commissioner maintains that the ALJ noted that the record did not support Plaintiff's symptoms as intense, persistence, or limiting as alleged. (Doc. #10, *PageID* #s 3791-96). The ALJ reached this finding by considering the objective physical and mental examinations, as well as imaging studies, showing that Plaintiff's functioning was not as limited as alleged. *Id.* According to the Commissioner, the ALJ's detailed discussion of the evidence, particularly his

work and volunteer activity during the relevant period, shows that, while Plaintiff had limitations from his fibromyalgia, they were not so significant so as to render him disabled. *Id.* The Commissioner also argues that the ALJ properly considered the persuasiveness of CNP Joseph's opinion, articulating both the supportability and consistency factors, as required by the relevant regulations. *Id.* at 3796-3802.  As to Plaintiff's allegations of misstating the legal standard for evaluating symptom severity, the Commissioner argues that the ALJ cited the appropriate legal standards for evaluating symptoms and then properly applied those standards. *Id.* at 3802-05.

### *The ALJ's Evaluation of Plaintiff's Fibromyalgia and Symptom Severity*

First, Plaintiff alleges that the ALJ's decision was not supported by substantial evidence, arguing that it relies too heavily on a lack of objective evidence to discount Plaintiff's fibromyalgia symptoms and fails to explain "how or whether [subjective] evidence in the record was considered." (Doc. #8, *PageID* #3773). In response, the Commissioner avers that the ALJ properly considered the record as a whole, providing a detailed discussion of the evidence to explain his decision that "while Plaintiff had limitations from his fibromyalgia, they were not so significant so as to render him disabled." (Doc. #10, *PageID* #3796).

Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." Soc. Sec. R. 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). Notably, as the Sixth Circuit has emphasized on several occasions, fibromyalgia patients "generally 'present no objectively alarming signs.'" *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 861 (6th Cir. 2011) (citing *Rogers*, 486 F.3d at 243) (citations omitted). Therefore, "disability claims related to fibromyalgia

are related to the *symptoms* associated with the condition—including complaints of pain, stiffness, fatigue, and inability to concentrate—rather than the underlying condition itself." *Id.* at 862 (citing *Rogers*, 486 F.3d at 247) (citation omitted). As a result, the assessment of subjective symptoms in fibromyalgia cases is often of critical importance. *See* Soc. Sec. R. 12-2p, 2012 WL 3104869; *see also Swain v. Comm'r of Soc. Sec.*, 297 F.Supp.2d 986, 993 (N.D. Ohio 2003) (reversing where ALJ relied solely on objective tests and failed to acknowledge longitudinal clinical data including the treating physician's "finding that Swain exhibited ....18 of the 18 designated tender points.").

In assessing a claimant's subjective symptoms, the ALJ must engage in a two-step process. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." Soc. Sec. R. 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529. Second, the ALJ must "evaluate the intensity and persistence of an individual's symptoms ... and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." Soc. Sec. R. 16-3p, 2017 WL 5180304, at *9; *see also* 20 C.F.R. § 404.1529. The Social Security Administration "recognize[s] that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence." Soc. Sec. R. 16-3p, 2017 WL 5180304, at *9. The ALJ must therefore examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms;

6

statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*

When evaluating the intensity, persistence, and limiting effects of the claimant's alleged symptoms, the ALJ must consider the following factors:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

Soc. Sec. R. 16-3p, 2017 WL 5180304, at *7-8; *see also* 20 C.F.R. § 404.1529(c)(3). The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. *Id.*

Furthermore, Social Security Ruling 16-3p requires the ALJ's decision to "explain which of an individual's symptoms [the ALJ] found consistent or inconsistent with the evidence in [the] record and how [his] evaluation of the individual's symptoms led to [his] conclusions." Soc. Sec. R. 16-3p, 2017 WL 5180304, *8. Additionally, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be *clearly articulated* so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* (emphasis added). Moreover, the Sixth

Circuit has emphasized that the articulation requirement of Social Security Ruling 16-3p[3] is especially important in cases like this one—"given the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important." *Rogers*, 486 F.3d at 248.

In the present case, the ALJ properly considered Plaintiff's fibromyalgia and provided a thorough analysis of his findings. ALJ Adkins determined that Plaintiff's fibromyalgia was a severe impairment that significantly limited Plaintiff's ability to perform basic work activities. (Doc. #7-2, *PageID* #45). The ALJ stated that, while fibromyalgia—in addition to obesity and headaches—do not have specific listings, he considered them under SSRs 12-2p, 19-2p, and 19-4p and found that they did not cause Plaintiff to meet or medically equal any listing. *Id.* at 47. The ALJ then found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. *Id.*, at 51. However, he concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in record for the reasons explained in this decision." *Id.* at 51. The ALJ specifically addressed Plaintiff's fibromyalgia. *Id.* at 45.

---

[3] Social Security Ruing 16-3p is applicable to decisions made after March 28, 2016. In Soc. Sec. R. 16-3p, the Agency removed the word "credibility" from an earlier rule (Soc. Sec. R. 96-7p) and refocused the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." Soc. Sec. R. 16-3p, 2017 WL 5180304 at *2 (October 25, 2017). Despite the elimination of the term "credibility," "courts agree that the prior case law remains fully applicable to the renamed "consistency determination" under Soc. Sec. R. 16-3p, with few exceptions." *Clemow v. Comm'r of Soc. Sec.*, No. 1:20-CV-592, 2021 WL 6125021, at *14 (S.D. Ohio Dec. 28, 2021) (citing *Duty v. Comm'r of Soc. Sec.*, 2018 WL 4442595 at *6 (S.D. Ohio Sept. 18, 2018) ("existing case law controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.")).

In determining Plaintiff RFC, the ALJ noted Plaintiff's subjective reports, summarizing

Plaintiff's hearing testimony extensively, stating

> … [Plaintiff] testified that he was unable to work because he was in a lot of pain all of the time due to his fibromyalgia. His fibromyalgia pain was generalized and moved everywhere. If he did not trigger it, it started in the thighs and calves, which turned throbbing. His pain averaged 5/10 and ended at 7/10, and there were a couple times per month that it went to 9/10. He took a bath for his pain a little less often recently because they had not been working. If he did something one day, including too much motion or trying to lift too much, it may affect him more the next day. It could cause a shocking sensation from the shoulders to the fingertips. His hands hurt most of the time, but using them hurt more. They could get tight with an electrical charge feeling. The electrical shocks caused him to drop things such as a glass of water or eating utensil. Most of the time, his feet were burning and hurting from neuropathy. He also reported the muscles in his legs sometimes gave out, which is why he had a rollator. There were days where he used a single point cane. He used his cane for short distances, such as around in the house and going from his house to the car. He used the rollator for anything further. Standing triggered his feet issues and caused his leg muscles to start throbbing, and he was limited to standing for five to ten minutes. Sitting was uncomfortable in most positions, and he had to stretch out after about fifteen minutes. He reported driving long distances, which he described as more than twenty-five minutes, tripped narcolepsy or fatigue. He also indicated that sitting caused back pain if the seats were not heated. If he came across stairs, he needed to make adjustments. If he was climbing stairs, he had to use the handrail and go one step at a time. If he had his cane or rollator, he had to use the elevator. Lifting was limited to about three pounds. He indicated some issues with dropping things. He tried not to take too much medication, including avoiding opioids. He reported significant fatigue both with and without his gabapentin. The only surgery suggested was for carpal tunnel, but he was trying to treat it without surgery with the use of a brace at night.
>
> He noted some issues with gallstones and colitis. He stated his abdominal pain was off the charts about once or twice per week. He stated he had about five to seven bowel movements that lasted an hour to an hour and a half. He had to stop one of his medications because it canceled out other medications. On a typical day, he immediately had to go to the restroom after waking. He stated he had to take a nap shortly after waking. Outside of meals, he was either using the restroom or laying down. He stated he had trouble sleeping. He either overslept or his sleep was interrupted due to pain. He slept eight to fifteen hours per night. He napped daily for about three hours. He had at least one nap and sometimes up to three per day. He indicated reading could trigger a migraine. Light from the television could also

trigger a migraine. He was wearing sunglasses at the hearing due to light from the windows and fluorescent lights. He indicated migraines occurred about fifteen to twenty-five days per month, and they last most of the day for at least five hours. They usually did not last for two weeks, though the typical length was three to four days. Average pain during headaches was 7/10, and he went to the emergency room at 9/10 pain levels. He suggested he had the particularly bad migraines five times per month. Some medications had not worked, and his provider was trying to get a prior authorization for a new medication. As of his hearing, [Plaintiff] was 5'10" and weighed 285. He reported his mental health had always been pretty bad, but it was worse in 2022 with medication changes. He had been on Lexapro and Wellbutrin for so long that they stopped working, and he had bad side effects from new trials that either were not tolerable or caused worsening mental health symptoms. He was pink slipped in 2022. He stated he always had internal dialogue that was almost like voices that were suicidal, but there was a change in tone that sounded like a different voice telling him to harm himself. The thought or voice went away if he missed a dose. He wanted to make sure he would not harm himself while the medication was in his system. Manic periods occurred about three times per year where he put himself in credit card debt, and he got argumentative and combative. He had some trouble with attention issues and was eventually diagnosed with ADHD, and new medications increased zoning out and loss of vocabulary with trying to find a word. He indicated some trouble with retaining information, and he had to reread things. He would forget to respond to texts. He endorsed some PTSD. Side effects of medication included dizziness, fatigue, confusion, and trouble focusing on things.

(Doc. #7-2, *PageID* #s 50-51).

In further support of his findings, ALJ Adkins provided a thorough analysis of Plaintiff's fibromyalgia and accompanying symptoms. *Id.* at 51-61. Specifically, throughout his decision, ALJ Adkins notes Plaintiff's reports of joint pain, generalized pain, swelling, gastrointestinal concerns, fatigue, muscle weakness, numbness and tingling in his extremities, stiffness, throat pain, headaches and migraines, some reduced active range of motion, and more. (Doc. #7-2, *PageID* #s 51-61). The ALJ also noted objective findings from various examinations over time, including lack of inflammation, lack of deformities, no sensory deficits, no tenderness, relatively good range of motion, intact sensation, good strength, and usually normal gait—among others. *Id.*

The ALJ specifically emphasized that, while Plaintiff requested a rollator walker and cane, treatment notes reflected that these assistive devices were rarely—if ever—used. *Id.* at 53. Further, while Plaintiff complained of pain and other symptoms relevant to fibromyalgia, this "rarely, if ever, required urgent or emergency room care." *Id.* (citing Doc. #s 7-7–7-24). The ALJ also indicated that, while he was not working, Plaintiff was volunteering and was "not napping much because he was busy." *Id.* at 54.

The ALJ thoroughly contemplated Plaintiff's sleep disorders, which Plaintiff avers is an "ongoing severe symptom of precisely the kind expected for a fibromyalgia sufferer," (Doc. #8, *PageID* #3776), highlighting Plaintiff's complaints of headaches and dizziness, fatigue, gastrointestinal concerns, and worsening headaches and migraines. (Doc. #7-2, *PageID* #s 54-55). However, despite these reports, Plaintiff told sleep consultants and examiners that he was not using his CPAP machine as instructed, indicating only a 66.7% compliance over 90 days in 2021, not wearing his CPAP for about a year in 2022, returning to a 4-6% compliance over 90 days in 2023, and maintaining a 34% CPAP compliance over 90 days around January 2024. *Id.* The ALJ also took into account that—despite concerns related to general pain, disordered sleep, headaches and migraines, and gastrointestinal issues—Plaintiff's examinations indicated an intact sensation and equal strength in all four extremities, no facial droop or speech deficits, and more. *Id.* Further, the ALJ noted that, while Plaintiff's medication list suggested Botox every three months for migraines, treatment notes did not reflect that he participated in this treatment. *Id.* at 56. The ALJ found that

> While there was an isolated report of an extended migraine period in December 2023 and an extended headache period in (*sic*) after a motor vehicle accident in November 2023, the remainder of his treatment notes show rare complaints of headaches with only conservative treatment, indicating relatively good control over

them. Therefore, the reduced range of light work in the above residual functional capacity fully addresses the claimant's migraines, narcolepsy, obstructive sleep apnea, and hypertension, as it includes a restriction on hazards to address potential breakthrough symptomology. His treatment history, including limited, conservative treatment for his headaches, demonstrates that his symptomology is not so pervasive as to support additional restrictions such as those related to absenteeism, time off-task, or additional breaks.

*Id.*

The ALJ's thorough analysis of Plaintiff's fibromyalgia and accompanying symptomology detailed Plaintiff's subjective reports as well as objective examination results and treatment notes. *Id.* at 51-61. In doing so, the ALJ considered Plaintiff's daily activities; location, duration, frequency, and intensity of pain and other symptoms; factors that precipitate and aggravate Plaintiff's symptoms; type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; measures other than treatment an individual uses or has used to relieve pain or other symptoms; and other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 16-3p, 2017 WL 5180304, at *7-8; *see also* 20 C.F.R. § 404.1529(c)(3).

ALJ Adkins adequately engaged with the record as a whole, leveraging his extensive consideration of the various reports and findings to "build an accurate and logical bridge between the evidence and the result." *Shawn S. v. Comm'r of Soc. Sec.*, No. 2:25-cv-14, 2026 WL 879075, at * 19 (S.D. Ohio March 31, 2026) (Marbley, D.J.) (citing *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)). Therefore, because a reviewing body can adequately trace the ALJ's

reasoning on review, the undersigned recommends that Plaintiff's first statement of error be overruled.

### *The ALJ's Statement of the Legal Standard*

Next, Plaintiff argues that the ALJ committed reversible legal error by misstating the standard for evaluating Plaintiff's symptoms—namely that the ALJ used the term "entirely consistent" rather than the language found in 20 C.F.R. §§ 404.1529(a) of "can reasonably be accepted as consistent." (Doc. #8, *PageID* #3782). The Commissioner contends that Plaintiff's allegations that the ALJ misstated the standard amounts to "semantic nitpicking," pointing to the ALJ's accurate recitation of the standard and indicating that the verbiage at issue was used "while applying the second step of the two-step process for evaluating [Plaintiff's] symptoms …" (Doc. #10, *PageID* #3804).

In this case, Plaintiff correctly points out that the ALJ must "consider all [of Plaintiff's] symptoms, including pain, and the extent to which [his] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). However, the ALJ also correctly recites this standard. (Doc. #7-2, *PageID* #49) ("[T]he undersigned has considered all symptoms and the extent to which these symptoms *can reasonably be accepted as consistent* with the objective medical evidence and other evidence … the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s) … that *could reasonably be expected* to produce the claimant's pain or other symptoms.") (emphasis added). As the ALJ also correctly cites, he must also "evaluate the intensity, persistence, and limiting effects of the

13

claimant's symptoms to determine the extent to which they limit the [Plaintiff's] work-related activities." *Id.*; § 404.1529(a). The ALJ then engages with this two-step process, finding that Plaintiff's medically determinable impairments "*could reasonably be expected* to cause the alleged symptoms." (Doc. #7-2, *PageID* #51). When considering intensity, persistence, and limiting effects of Plaintiff's symptoms, the ALJ found that Plaintiff's statements were not "entirely consistent with the medical evidence and other evidence in the record" before providing a detailed summary of the medical evidence related to Plaintiff's impairments. *Id.* at 51-61. While not using the magic words that the intensity, persistence, and limiting effects "could not reasonably be accepted as consistent with the objective medical evidence and other evidence" in his analysis, the ALJ's contemplation of Plaintiff's subjective reports in light of the objective medical evidence clearly meets this standard and is supported by substantial evidence, as discussed *ad nauseum* above. *Id.*; § 404.1529(a).

Furthermore, this Court, the Northern District of Ohio, and the Sixth Circuit have routinely upheld ALJ findings with this exact same verbiage. *May-Ree N. v. Comm'r of the SSA*, No. 3:21-cv-297, 2023 WL 2705068, at *16-17 (S.D. Ohio March 30, 2023) (Gentry, M.J.) ("Further, the ALJ provided reasonable explanations, supported by substantial evidence, for finding that Plaintiff's symptoms—including symptoms associated with fibromyalgia—are not entirely consistent with the medical and other evidence of record."); *Hobbs v. Comm'r of Soc. Sec.*, No. 5:18-cv-446, 2019 WL 315046, at *34 (N.D. Ohio Jan. 23, 2019) ("Here, the ALJ applied proper legal procedures and reached a conclusion supported by substantial evidence when he determined that Hobbs' statements regarding the intensity, persistence, and limiting effects of his symptoms

were not entirely consistent with the medical and other evidence in the record.") (internal citations omitted); *Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x. 162, 173 (6th Cir. 2016) ("'[W]e are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying.' … However, we have declined to give substantial deference to an ALJ's 'unexplained credibility finding' where the claimant's testimony was 'entirely consistent' with the medical evidence in the record, such that there was literally no medical evidence in the record that conflicted with the claimant's testimony regarding her pain.") (internal citations omitted); *see also Elaine K. v. Comm'r of Soc. Sec.*, No. 3:24-cv-320, 2026 WL 776319, at *13 (S.D. Ohio March 19, 2026) (Gentry, M.J.); *Wyatt v. Comm'r of Soc. Sec.*, 2023 WL 3347510, *3-8 (6th Cir. 2023).

Accordingly, because the ALJ properly addressed the two-step process and his findings are supported by substantial evidence, the undersigned recommends that Plaintiff's second statement of errors be overruled.

### The ALJ's Evaluation of CNP Joseph's Medical Opinion

Finally, Plaintiff argues that the ALJ erred in rejecting the opinion of rheumatological nurse practitioner Megan Joseph, CNP, who treated Plaintiff for fibromyalgia.  (Doc. #8, *PageID* #s 3780-81). The Commissioner contends that the ALJ properly considered Joseph's opinion, adequately discussed the consistency and supportability of her findings, and appropriately found her opinions to be somewhat persuasive. (Doc. #10, *PageID* #s 3796-02).

A plaintiff's RFC is an assessment of "the most [a plaintiff] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). A plaintiff's RFC assessment must be based on all the

relevant evidence in his case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 404.1520c(c)(1)–(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. § 404.1520c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. § 404.1520c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. § 404.1520c(b)(2). The ALJ bears the burden of "show[ing] his or her work"; in other words, the ALJ must "explain

16

in detail *how the factors actually were applied* in each case, to each medical source." *Kenneth M. v. Comm'r of Soc. Sec.*, No. 3:24-CV-182, 2025 WL 1948987, at \*12 (S.D. Ohio July 16, 2025) (Preston Deavers, M.J.) (citing *Hardy v. Comm'r of Soc. Sec.*, 554 F.Supp. 3d 900, at \*6 (E.D. Mich. 2021)); *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 1009135, at \*5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (internal citations omitted).

Further, an ALJ must "provide a coherent explanation of [his] reasoning," *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at \*14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021), and "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, 2021 WL 860506, at \*8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)); *Decorian P.R. v. Comm'r of Soc. Sec. Admin.*, 2024 WL 1155941, at \*5 (S.D. Ohio Mar. 18, 2024) (internal citation omitted). An "ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Id.*

In July 2023, CNP Joseph completed a Basic Mental form for the Ohio Department of Job and Family Services, listing Plaintiff's diagnoses as fibromyalgia, arthralgia, lumbar radiculopathy and gout. (Doc. #7-9, *PageID* #961). His symptoms included crepitus, pain to palpation (or tenderness when touched) in the knees and back, and limited spinal range of motion. *Id.* CNP Joseph opined that Plaintiff could sit for seven hours in an eight-hour workday and one hour at a

time; he was able to stand and/or walk for one to two hours per day and half an hour at a time; he was limited to lifting and/or carrying up to ten pounds occasionally and five pounds frequently; and moderately limited in pushing, pulling, bending, reaching, handling, and repetitive movements. *Id.* at 962. CNP Joseph noted that Plaintiff used a cane to ambulate and that he requested a prescription for a shower chair and rollator. *Id.*

The ALJ determined that CNP Joseph's opinion was "somewhat persuasive," finding that her opinion was generally not supported by or consistent with the record, which demonstrated significantly better functioning than opined. (Doc. #7-2, *PageID* #63). The ALJ noted for example that CNP Joseph's treatment notes reflected crepitus and a single notation of use of a cane with no other abnormalities on examination, did not support the degree of limitation opined, particularly with respect to standing, walking, and lifting. *Id.* (citing Doc. #7-9, *PageID* #s 970-1035). The ALJ further explained that other treatment notes reflected substantially better functioning even when giving Plaintiff the full benefit of the doubt with respect to subjective complaints and findings on his EMGs. *Id.* The ALJ noted that, despite his subjective reports, Plaintiff usually presented with relatively good strength that was often reported to be normal and 5/5, and examinations never reflected more than a slight reduction in strength rated 4/5. (Doc. #7-2, *PageID* #s 63-64). In addition, treatment notes from his hand specialist specifically note normal strength. *Id.* at 64. The ALJ also found that Plaintiff usually presented with an adequate gait, and there were only two notations of use of a cane with no use of the rollator at appointments despite his request for one. *Id.*

18

The ALJ's reliance on objective medical evidence is not *per se* impermissible. *Tatum S. v. Comm'r of Soc. Sec.*, No. 2:25-cv-932, 2026 WL 890377, at *14 (S.D. Ohio April 1, 2026) (Jolson, M.J.). On the contrary, ALJ's are compelled to consider objective medical evidence. SSR 12-2p, 2012 WL 3104869, at *2. ("[W]e must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity."). Further, "an ALJ's reliance on a lack of objective findings may not require remand where the ALJ also relies on other considerations such as a claimant's activities of daily living or improvement with treatment." *Tatum S.*, 2026 WL 890377, at *15 (quoting *Rossi v. Comm'r of Soc. Sec.*, No. 1:25-CV-00625, 2025 WL 3671796 (N.D. Ohio Dec. 18, 2025)) (internal quotations omitted). ALJ Adkins has done so here. Unlike the ALJ in *Tatum S.*, whose lack of discussion on the "limited information" surrounding Plaintiff's daily activities necessitated remand, the ALJ in this case detailed Plaintiff's testimony as well as clinical notes regarding Plaintiff's daily activities. (Doc. #7-2, *PageID* #s 51-64). Specifically, the ALJ noted that Plaintiff indicated his symptoms were better during the warmer months (*id.* at 52); Plaintiff's inconsistent use of assistive devices, such as wrist braces (*id.*), a cane (*id.* at 53), a rollator walker (*id.*), and a CPAP machine (*id.* at 54-55); Plaintiff's reports that he slept roughly 11 hours each day (*id.* at 53); Plaintiff spoke with a friend in Ukraine daily (*id.* at 59); Plaintiff ate and cared for himself appropriately, including caring for his personal hygiene (*id.*); Plaintiff engaged in some work and volunteered (*id.* at 54, 60); and more, as described in detail above.

19

More specific to the ALJ's treatment of CNP Joseph's findings, the ALJ need only articulate the reasons for the findings and conclusions that he makes in building an "accurate and logical bridge between the evidence and his conclusion." *Id.* at 9-10 (citing *Fleischer v. Astrue*, 774 F.Supp. 2d 875, 877 (N.D. Ohio 2011); *Bailey v. Commissioner of Social Security*, 173 F.3d 428, 1999 WL 96920, at *4 (6th Cir. 1999)). Again, the ALJ has done so here. (Doc. #7-2, *PageID* #s 51-64). First, ALJ Adkins expressly contemplates supportability and consistency, finding that "[t]he opinion of Ms. Joseph is generally not *supported by or consistent* with the record." *Id.* at 63. The ALJ further explains his reasoning, finding that "Ms. Joseph's own treatment notes … do not support the degree of limitation opined" and that "[o]ther treatment notes also reflect substantially better functioning even when giving him the full benefit of the doubt with respect to subjective complaints and findings on his EMGs." *Id.* The ALJ specifically points to CNP Joseph's notes that reflect crepitus and only one use of the prescribed cane with no other abnormalities as well as a lack of evidence—whether subjective reports or objective medical evidence—to support the intensity and severity of the limitations as to standing, walking, and lifting. *Id.* (citing Doc. #7-9). The ALJ contemplated direct inconsistencies between Plaintiff's subjective complaints and the results of objective examinations, emphasizing the rare instances of cane or rollator walker use that were noted in medical notes and strength findings that contradicted Plaintiff's assertions. (Doc. #7-2, *PageID* #64).

Thus, the ALJ has met the minimum level of articulation necessary to avoid frustrating the court's ability to determine whether the ALJ's findings are sufficiently supported by substantial evidence. *Id.*; *Warren I. v. Comm'r of Soc. Sec.*, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021);

20

*See Ison v. Comm'r of Soc. Sec.*, No. 2:16-CV-464, 2017 WL 4124586, at *13 (S.D. Ohio Sept. 18, 2017) (Marbley, D.J.) (explaining that "[t]he Sixth Circuit does not require remand where an ALJ provides minimal reasoning at step three of the five-step inquiry.") (internal citation omitted). Therefore, the undersigned recommends that the Court find that ALJ Adkins did not err in his treatment of CNP Joseph's opinion and the ALJ's decision is supported by substantial evidence.

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision.

**IT IS THEREFORE RECOMMENDED THAT:**

1.      The Commissioner's non-disability finding be **AFFIRMED**; and

2.      The case be terminated on the Court's docket.


June 23, 2026                                                    *s/ Peter B. Silvain, Jr.*
                                                                Peter B. Silvain, Jr.
                                                                United States Magistrate Judge

21

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).